**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVSION**

| | |
|---|---|
| **TYRONE KENNER, et al.,** | Case No: 1:16-cv-01513 |
| Plaintiffs, | JUDGE DAN AARON POLSTER |
| -vs- | |
| **WINKING LIZARD, INC., et al.,** | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Daniel L. Messeloff (0078900)
James M. Stone (0034691)
Michael J. Kozimor (0092376)
**Jackson Lewis P.C.**
Park Center Plaza I, Suite 400
Cleveland, Ohio 44131
Telephone: (216) 750-0404
Fax: (216) 750-0826
Email:Daniel.Messeloff@jacksonlewis.com
James.Stone@jacksonlewis.com
Michael.Kozimor@jacksonlewis.com

Attorneys for Defendants

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

I. THE LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C) .......................................................................................................... 3

II. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE THAT THEY RECEIVED LESS THAN THE FULL MINIMUM WAGE IN ANY WORK WEEK ......... 3

II. PLAINTIFF'S CLAIM THAT THEY WERE NOT PROVIDED NOTICE OF THE TIP CREDIT PROVISION FAILS AS A MATTER OF LAW .......................................................................... 6

IV. PLAINTIFFS' "DUAL JOBS" CLAIM SHOULD BE DISMISSED ...................................... 7

    A. THE STATUTORY AND REGULATORY FRAMEWORK FOR PLAINTIFFS' "DUAL JOBS" CLAIMS .............................................................................................. 7

        1. The Statutory Text ................................................................................ 7

        2. The Regulations .................................................................................... 8

    B. THE DOL'S SUB-REGULATORY GUIDANCE .......................................... 10

        1. The 1980 Opinion Letter .................................................................... 10

        2. The 1985 Opinion Letter .................................................................... 11

        3. The 1988 Revision To The Field Operations Handbook .......................... 12

        4. In A 2009 Opinion Letter, The DOL Completely Rewrote Its Approach To The Dual Jobs Issue .......................................................... 13

        5. The DOL's 20% Rule Is Not Entitled To Deference From The Court ...... 14

    C. COURTS HAVE REJECTED PLAINTIFFS' "DUAL JOBS" CLAIM ................. 16

    D. THE COURT SHOULD FOLLOW THE PLAIN LANGUAGE OF THE FLSA, THE REGULATIONS, CRAIG AND OTHER CASES AND DISMISS PLAINTIFFS' CLAIM REGARDING TIME SPENT PERFORMING PURPORTED "NON-TIPPED" DUTIES. ......... 21

CONCLUSION ............................................................................................................... 23

L.R. 7.1(f) CERTIFICATION ........................................................................................... 24

i

# TABLE OF AUTHORITIES

## Cases

*Adair v. City of Kirkland*, 185 F.3d 1055 (9th Cir. 1999) ................................................................ 5

*Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir.2010) ..................................................................... 3

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................................................... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............ 3

*Christensen v. Harris Cty,* 529 U.S. 576, 588 (2000) .................................................................... 14

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ...................................... 14, 16

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007) ....................... 3

*Craig v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 80489, *9
(S.D. Ohio June 21, 2016) ................................................................................ 4, 5, 19, 20, 21

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007) ......................................... 3

*Kiker v. Smithicline Beecham Corp.*, 2015 U.S. Dist. LEXIS 133542, *5
(S.D. Ohio Sept. 30, 2015) ...................................................................................................... 3

*Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998) .............................. 4

*Kirchgessner v. CHLN, Inc.*, 2016 U.S. Dist. LEXIS 1337, *18 (D. Ariz. Jan. 4, 2016) ....... 10, 19

*McClamb v. High 5 Hospitality*, 2016 U.S. Dist. LEXIS 89985, *7 n. 1
(D. Del. July 12, 2016) ............................................................................................................ 7

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ............................................................................ 3, 7

*Montijo v. Romulus Inc.*, 2015 U.S. Dist. LEXIS 41848, *27-28
(D. Ariz. Mar. 30, 2015) .............................................................................................. 9, 15, 19

*Pellon v. Business Rep. Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007),
*aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008) .................................................................. 9, 16, 17

*Richardson v. Mountain Range Restaurants LLC*, 2015 U.S. Dist. LEXIS 35008,
*5 (D. Ariz. Mar. 20, 2015) ............................................................................................ 5, 18, 19

*Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995 (N.D. Ind. 2013) ......................................... 17

*Romero v. Top-Tier Colorado LLC*, 2016 U.S. Dist. LEXIS 15652
(D. Colo. Feb. 9, 2016) ............................................................................................................ 4

*Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870 (2014) ..................................................................... 22

*Schaefer v. P.F. Chang China Bistro, Inc.*, 2014 U.S. Dist. LEXIS 105444, *4
(D. Ariz. Aug. 1, 2014) ................................................................................................ 4, 9, 18, 22

*Townsend v. BG-Meridian, Inc.*, 2005 U.S. Dist. LEXIS 45200, *17-20
(D. Okla. Nov. 7, 2005) .......................................................................................................... 19

*U.S. Dep't of Labor v. Cole Ent., Inc.*, 62 F.3d 775 (6th Cir. 1995) .............................................. 5

**Statutes**

29 C.F.R. § 531.56(e) ................................................................. 8, 9, 13, 20, 21

29 C.F.R. § 785.47 ................................................................................... 14

29 C.F.R. §§ 531.50-.60 ............................................................................. 8

29 U.S.C. § 203(m) ............................................................................ 4, 6, 8

29 U.S.C. § 203(t) ..................................................................................... 8

29 U.S.C. § 206(a) ................................................................................. 3, 4

29 U.S.C. § 206(a)(1)(C) ............................................................................ 7

FOH § 30d00(e) ...................................................................................... 14

**Other Authorities**

2009 DOLWH LEXIS 27 (Mar. 2, 2009) ..................................................... 14

H. Rep. No. 89-1366 at 11, 14, 17 (1966) ................................................. 10

Pub. L. No. 89-601, §§ 101(a), 201(a), 80 Stat. 830 (1966) .......................... 7

S. Rep. No. 89-1487, at 10 (1966) ........................................................... 10

U.S. Department of Labor, Wage and Hour Division, Field Operations Handbook § 30d00(3) (Dec. 9, 1988) ................................................................................... 12

U.S. Department of Labor, Wage and Hour Division, Opinion Letter, 1985 DOLWH LEXIS 9 (Dec. 20, 1985) ................................................................................... 12

U.S. DOL, Wage and Hour Division, Opinion Letter FLSA2009-23, 2009 DOLWH LEXIS 27 (Jan. 16, 2009) .................................................................................... 14

U.S. DOL, Wage and Hour Division, Opinion Letter WH-502, 1980 DOLWH LEXIS 1 (Mar. 28, 1980) ................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 3

Fed. R. Civ. P. 12(c) ................................................................................. 3

## INTRODUCTION

The Fair Labor Standards Act ("FLSA") allows an employer to satisfy part of its minimum wage obligation towards its tipped employees by taking a "credit" towards the payment of the minimum wage based on any tips such employees receive.  The FLSA requires an employer who chooses to use the tip credit to pay the employee cash wages of at least $2.13 per hour.  The employee's tips then supplement his or her hourly wages at least up to the general untipped wage of $7.25 under federal law.  If the employee does not earn sufficient tips to bring his or her earnings up to that amount, the employer must make up the difference.  In order to use this tip credit, the employer must inform its tipped employees of the foregoing tip credit provisions.

Plaintiffs Tyrone Kenner, Christopher Sanford, Tayler Down and Victoria Cooper (collectively, "Plaintiffs") worked as servers and/or bartenders at restaurants owned or operated by Defendant Winking Lizard, Inc. ("Winking Lizard").[1]  In their Complaint, Plaintiffs essentially make two allegations.  First, Plaintiffs claim that Winking Lizard failed to inform them of the FLSA's tip credit provision. (Dkt. #1, ¶¶ 159-165)  Second, Plaintiffs claim that Winking Lizard paid them the tipped minimum wage rate for time they spent performing both tipped and untipped tasks, which Plaintiffs allege violates the FLSA. (*Id.*, at ¶¶ 166-171)  Both of Plaintiffs' claims should be dismissed as a matter of law.

First, Plaintiffs' claims should be denied because Plaintiffs have failed to allege that, between their wages from Winking Lizard and their tips from customers, they received less than the full minimum wage in any workweek at any time during their employment with Winking Lizard.  Courts have held that, in order to state a claim for a violation of the FLSA, a plaintiff

---

[1] Plaintiffs also named 15 individual Winking Lizard restaurants as defendants in this action. For purposes of this Motion, the individual restaurants will be referenced collectively with Winking Lizard, Inc. as "Winking Lizard."

must allege that he or she received less than minimum wage, *including tips*, for a week of work. Plaintiffs do not make any such allegation, and therefore their Complaint should be dismissed.

Second, as evidenced by Plaintiffs' executed Employee Handbook Acknowledgement Forms, copies of which are attached to Defendants' Answer to Plaintiffs' Complaint (*see* Dkt. # 8-1), Plaintiffs acknowledged that Winking Lizard informed them of the requisite information regarding the tip credit provision.  Because Plaintiffs cannot evade their acknowledgments that Winking Lizard informed them of the tip credit provision, Plaintiffs' first claim against Winking Lizard should be denied as a matter of law.

Third, Plaintiffs' minimum wage claim rests on their belief that Winking Lizard should have paid them the full minimum wage rate, without taking a tip credit, for all time they spent performing purported "non-tipped" tasks.  Plaintiffs' claim has no statutory or other proper legal basis, and it has been rejected by a growing number of courts, both within Ohio and across the country.  In brief, Plaintiffs' claim fails because the FLSA allows a tip credit when an employee is in a tipped *occupation*, regardless of the proportion of supposedly "tipped" vs. "non-tipped" duties the employee performs.  There is no dispute that Plaintiffs were in tipped occupations: they were servers and/or bartenders, and they earned at least $30 per month in tips.  Accordingly, Winking Lizard had the statutory right to take a tip credit, and therefore Plaintiffs' second claim fails as a matter of law.

For these reasons, Defendants respectfully submit that their Motion for Judgment on the Pleadings should be granted and Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

## ARGUMENT

### I.  THE LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding a motion for judgment on the pleadings, the Court applies the same standard as it would under Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Under Rule 12(b)(6), a court must dismiss a claim where the non-moving party "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, all well-pleaded material allegations of the non-moving party must be taken as true, and the motion may granted only if the moving party is nevertheless entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). However, the Court need not accept as true unsupported legal conclusions or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). Therefore, a complaint that fails to allege a legally cognizable claim or that fails to offer sufficient factual basis to show entitlement to relief "must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In adjudicating a motion for judgment on the pleadings, the Court may consider not only the plaintiff's complaint but also the defendant's answer and any attachments thereto. *Kiker v. Smithicline Beecham Corp*., 2015 U.S. Dist. LEXIS 133542, *5 (S.D. Ohio Sept. 30, 2015) (*citing* Fed. R. Civ. P. 12(c)). *See also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("documents attached to the pleadings become part of the pleadings").

### II.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE THAT THEY RECEIVED LESS THAN THE FULL MINIMUM WAGE IN ANY WORK WEEK

The FLSA requires employers to pay non-exempt employees a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a). An employer of "tipped employees" may credit a portion of

3

such employees' tips against this obligation. 29 U.S.C. § 203(m). To this end, the FLSA permits tipped employees to receive part of the minimum wage from the employer, and the remainder through tips received from customers, "provided that for the workweek the hourly wage and the employees' tips, taken together, are at least equivalent to the [$7.25 per hour] minimum wage." *Schaefer v. P.F. Chang China Bistro, Inc.*, 2014 U.S. Dist. LEXIS 105444, *4 (D. Ariz. Aug. 1, 2014). Under this rule, "regardless of the frequency with which non-tipped work was assigned," no minimum wage claim can proceed in the absence of allegations that a plaintiff's "average wage for the week, including tips, fell below the minimum wage." *Id.*, at *5. *See also Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 303 (6th Cir. 1998) (citing 29 U.S.C. § 206(a)) (affirming judgment in favor of employer where plaintiffs failed to allege that they ever received less than minimum wage for a week of work);

As another court explained,

[T]he Court's research into the landscape of the law nationwide leads it to the conclusion that whether Plaintiff is able to state a FLSA minimum wage violation depends on her total pay earned for the workweek divided by the total number of hours worked in the same week. . . . ***Recognizing that there are cases going both ways, the Court is more persuaded by those that have focused on the clear language of the statute. . . . Taking such instruction, the Court concludes that by earning more than the minimum wage every week she worked at the restaurant, Plaintiff does not state an FLSA claim, and her case must be dismissed.***

*Romero v. Top-Tier Colorado LLC*, 2016 U.S. Dist. LEXIS 15652, *12-16 (D. Colo. Feb. 9, 2016) (emphasis added, asterisks omitted).

Lastly, as the sister court to this Court recently held, "[a] plaintiff who fails to allege and show that his pay rate for the workweek was below the statutory minimum wage fails to establish an FLSA violation." *Craig v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 80489, *9 (S.D. Ohio June 21, 2016) (citing *Kilgore*, 160 F.3d at 303; *U.S. Dep't of Labor v. Cole Ent., Inc.*, 62 F.3d 775,

780 (6th Cir. 1995); *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999)).  *See id.* (granting motion to dismiss plaintiffs' complaint for failure to state a claim for violation of the "tip credit" provision; "while Plaintiffs allege the hourly rates at which Defendants compensated them, they have not alleged that their overall hourly rate, including tips, did not meet or exceed the statutory minimum wage. Therefore, the . . . complaint on its face fails to state a violation of the statutory minimum wage requirement.").

In this case, Plaintiffs do not allege that, between the wages they received from Winking Lizard *together with* the tips they received from their customers, they received less than the full minimum wage rate in any given workweek.  Rather, Plaintiffs merely assert their belief that they are entitled to the full minimum wage, rather than the tip-credit minimum wage, for time that Plaintiffs allegedly spent performing "non-tipped" work. (*See* Dkt. # 1, ¶ 145)  However, the FLSA requires no such increase:

> [T]he workweek as a whole, not each individual hour within the workweek, determines whether an employer has complied with § 206(a).  Thus, no minimum wage violation occurs so long as the employer's total wage paid to an employee in any given workweek [including tips] divided by the total hours worked in the workweek equals or exceeds the minimum wage rate.

*Richardson v. Mountain Range Restaurants LLC*, 2015 U.S. Dist. LEXIS 35008, *5 (D. Ariz. Mar. 20, 2015) (citations omitted) (dismissing plaintiff's "tip credit" claim for failure to state a claim under the FLSA).  Just as in *Craig*, *Richardson*, and other cases in which "tip credit" claims have been dismissed, Plaintiffs' "tasks. . . that allegedly were both related to and unrelated to [Plaintiffs'] occupation as a server. . . do not state a minimum wage claim since the pleading never alleges that during any particular week, the average of her hourly wages was less than the federal minimum wage." *Id.* (citing *Adair*, 185 F.3d at 1062).

Because Plaintiffs do not allege that they ever received, through a combination of their wages and their tips, less than the full minimum wage for any work week, Plaintiffs' claims fail as a matter of law and must be dismissed.

### III.  PLAINTIFFS' CLAIM THAT THEY WERE NOT PROVIDED NOTICE OF THE TIP CREDIT PROVISION FAILS AS A MATTER OF LAW.

In the event the Court declines to dismiss Plaintiffs' Complaint on the foregoing ground, Plaintiffs' claims should still be dismissed on separate grounds.  In particular, Plaintiffs' first claim, that Winking Lizard failed to inform them of the tip credit provision (Dkt. # 1, ¶ 159-165), is demonstrably untrue, and therefore should be dismissed.

The FLSA states that, for the tip credit to apply, the employer must inform its tipped employees of the provision.  29 U.S.C. § 203(m).  Here, it cannot be disputed that Winking Lizard informed Plaintiffs of the tip credit provision, as Plaintiffs each acknowledged in writing that Winking Lizard had done so.  In particular, Winking Lizard's Employee Handbook states:

> The U.S. Department of Labor recently amended its tip credit notice regulations, effective May 5, 2011, to require employers to informed tipped employees of certain tip credit information.  This information is provided in accordance with Section 203(m) of the Fair Labor Standards Act.  We are informing you of the following as a result of this new requirement:
>
> ▪ The amount of cash wage to be paid to you per hour will be $4.05.
>
> ▪ Assuming you have received a sufficient amount of tips to cover the tip credit, the amount of your tips per hour to be credited as wages will be $4.05.
>
> ▪ You have the right to retain all the tips you receive, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips . . .
>
> ▪ The tip credit shall not apply unless you have been informed of these requirements.

(Dkt. # 8-1, p. 2)  Plaintiffs each signed a copy of Winking Lizard's "Employee Handbook Acknowledgement Form" at the beginning of their employment, thereby acknowledging that they received the foregoing information. (*See id.*, at pp. 3-7)

6

Because Plaintiffs' respective Acknowledgement Forms conclusively establish that Winking Lizard informed each of them of the tip credit provision of the FLSA, there is no material issue of fact as to Plaintiffs' first claim.  *See, e.g., McClamb v. High 5 Hospitality*, 2016 U.S. Dist. LEXIS 89985, *7 n. 1 (D. Del. July 12, 2016) (dismissing claim that employer failed to notify plaintiff of tip credit provision, after employer proffered to court plaintiff's signed notice and plaintiff failed to dispute authenticity of same).  Plaintiffs' conclusory allegations in their Complaint need not be accepted in light of the incontrovertible documentation that Plaintiffs did in fact receive notice of the tip credit. *Mixon*, 193 F.3d at 400.  Accordingly, Defendants are entitled to judgment on as a matter of law on Plaintiffs' first claim.

## IV.  PLAINTIFFS' "DUAL JOBS" CLAIM SHOULD BE DISMISSED

Plaintiffs also assert that Defendants violated the FLSA by failing to pay them a non-tipped minimum wage for time they spent performing certain work.  However, numerous courts have rejected such claims as being contrary to both the letter and the spirit of the FLSA. Therefore, this claim should also be dismissed.

### A.  THE STATUTORY AND REGULATORY FRAMEWORK FOR PLAINTIFFS' "DUAL JOBS" CLAIMS

Before 1966, the FLSA did not generally apply to employees in restaurants.  In 1966, Congress enacted a "tip credit" provision to accommodate the long-standing practice in the foodservice industry whereby workers received most or all of their income via tips from customers.

#### 1.  The Statutory Text

Under the FLSA, employees must generally receive wages of at least $7.25 per hour. *See* 29 U.S.C. § 206(a) (1)(C).  However, a "tip credit" provision allows employers under certain

circumstances to receive credit toward a portion of their minimum-wage obligation for tips that "tipped employees" receive:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to:
>
> (1) the cash wage paid such employee for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [i.e., $2.13 per hour]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under Section 206(a)(1) of this title.

29 U.S.C. § 203(m).  The FLSA defines "tipped employee" as "any employee *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t) (emphasis added).

## 2.    The Regulations

The DOL's Wage and Hour Division has issued regulations addressing tipped employment.  *See* 29 C.F.R. §§ 531.50-.60.  The specific regulation driving Plaintiffs' theory for recovery is 29 C.F.R. § 531.56(e), which states in full:

> <u>Dual jobs.</u>  In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter.  In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter.  He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.  ***Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses.  It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group.  Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips***.

29 C.F.R. § 531.56 (e) (emphasis added).

8

Section 531.56 (e) ) thus states that the FLSA allows an employer to pay a tip credit wage to its "tipped employees," and only where an employee is engaged in *two separate occupations*, one tipped and one not tipped, is the employer limiting to taking the tip credit for only the tipped occupation.  *See Montijo v. Romulus Inc*., 2015 U.S. Dist. LEXIS 41848, *27-28 (D. Ariz. Mar. 30, 2015) ("531.56(e) is not ambiguous. The dual jobs regulatory framework identifies an employee performing two or more entirely distinct, non-overlapping jobs. Plaintiffs were not assigned two identifiable, separate occupations. Plaintiffs [were] engaged in one occupation, server. Section 531.56(e) specifically allows a server to engage in incidental related duties."); *Pellon v. Business Rep. Int'l, Inc*., 528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008) (holding that duties performed by Plaintiffs were "at worst" related duties in a tipped occupation, not those of another occupation).  The examples the DOL uses in the regulation are instructive, as they distinguish between two very different scenarios: The first scenario is where an employee holds two clearly distinct, *non-overlapping* roles – a hotel maintenance man and a waiter in the hotel restaurant – that would not be scheduled to work simultaneously.  The second scenario is where tipped employees in the course of their tipped occupation happen to perform some tasks that may not in and of themselves be tip-generating, such as preparing food or washing dishes.  In this scenario, the regulation specifically states that the employee is *not* engaged in a dual job.

Neither the FLSA nor the regulations makes any distinction whatsoever between *duties* within the occupation that are tip-producing or non-tip-producing, and there is nothing in either source that supports such a dichotomy; the regulation points to precisely the opposite conclusion. *See, e.g., Schaefer*, 2014 U.S. Dist. LEXIS 105444, at *14, n.5, 6 (noting that 29 C.F.R. § 531.56(e) "does not cap the amount of hours that servers may perform related non-tipped duties").

9

Additionally, there is not a single sentence in the legislative history of the tip credit provision that mentions or supports any distinction between duties which directly generate tips and those which may not. *See* S. Rep. No. 89-1487, at 10 (1966); H. Rep. No. 89-1366 at 11, 14, 17 (1966).[2]

Both the FLSA and the regulations thus focus not on the employee's duties or tasks at any given minute, but instead on the employee's *occupation*. The mix of an employee's duties in a tipped occupation does not affect whether or not the employee is a tipped employee, whereas time spent in a separate, non-tipped *occupation* (such as that of a maintenance worker) is not subject to the FLSA's tip credit.

### B.    THE DOL'S SUB-REGULATORY GUIDANCE

The DOL's interpretations of its own "dual jobs" regulation have been inconsistent with the statutory and regulatory text. *See, e.g., Kirchgessner v. CHLN, Inc*., 2016 U.S. Dist. LEXIS 1337, *18 (D. Ariz. Jan. 4, 2016) (granting employer's motion to dismiss plaintiff's tip-credit claim, finding that "it is undisputed that the DOL's Wage and Hour Division in its opinion letters regarding the dual jobs regulation has provided inconsistent guidance, first taking one position, then reversing course, reversing course again, then withdrawing the original position.").

### 1.    The 1980 Opinion Letter

In 1980, the DOL's Wage and Hour Division issued an opinion letter addressing whether certain tasks that a server performs qualify for the tip credit. That letter states, in relevant part:

> You state the tipped employees clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables (including filling cheese, salt and pepper shakers) and vacuum the dining room carpet, after the restaurant is closed . . . .
>
> As you know, Section 531.56(e) of 29 CFR Part 531, deals with tipped employees who are performing dual jobs. This section explains that a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses is not employed in two occupations.

---

[2] The relevant excerpts of the legislative history are attached hereto as Exhibit 1 and 2, respectively.

Further, such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.  As indicated, however, where there is a clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties, no tip credit may be taken for the time spent by a waitress performing maintenance duties.

***Insofar as the after-hours clean-up you describe are assigned generally to the waitress/waiter staff, we believe that such duties constitute tipped employment within the meaning of the regulation.***

U.S. DOL, Wage and Hour Division, Opinion Letter WH-502, 1980 DOLWH LEXIS 1 (Mar. 28, 1980) (emphasis added).

Thus, where the tasks at issue are generally assigned to other tipped employees rather than just to one individual, and where the tasks are not exclusively the province of employees in a non-tipped occupation, the DOL endorsed treating such activities as part of the employee's tipped occupation, and thus as properly-tipped employment.

### 2.      The 1985 Opinion Letter

In 1985, the DOL took a different approach in a scenario where a waitress in a restaurant was assigned "salad bar and dining room set-up" duties, which she claimed constituted 30-40% of her working time.  There, the DOL said the following:

The legislative history of the 1974 amendments of FLSA (in particular, page 43 of Senate Report No. 930360, February 22, 1974) indicates that employees who "customarily and regularly" receive tips are waiters, waitresses, bell persons, counter persons, bus help, and service bartenders.  It also indicates that janitors, dishwashers, chefs, and laundry room attendants are not tipped employees.  It is our opinion that salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar . . . .

[T]ip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff.  However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities. . . .

11

> Therefore, based on the information you have provided, it is our opinion that no tip credit may be taken for the hours spent by an assigned waiter or waitress in opening responsibilities.

U.S. DOL, Wage and Hour Division, Opinion Letter, 1985 DOLWH LEXIS 9 (Dec. 20, 1985).

This letter is troubling in several respects.  First, it equates salad preparation with the work of a chef (a non-tipped occupation) without considering whether that work could also be performed by a counterperson (an individual who cooks food in the presence of customers, a tipped occupation).  Second, it unilaterally invents a quantitative limit on the amount of time an employee in a tipped occupation may spend on certain tasks that the DOL had previously determined fall within the tipped occupation, indicating that "substantial" amounts of time on such tasks would defeat a tip credit.

### 3.    The 1988 Revision To The Field Operations Handbook

Following the 1985 opinion letter, the Wage and Hour Division inserted the following language into Section 30d00(e) of its Field Operations Handbook ("Handbook"):

> Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though the duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities).  For example, a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip-producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers.  However, *where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for time spent in such duties*.

U.S. DOL, Wage and Hour Division, FIELD OPERATIONS HANDBOOK § 30d00(3) (Dec. 9, 1988) (emphasis added).[3]  The Handbook thereby purports to shift the focus of the analysis from the *occupation* to the *duties*.  In so doing, the DOL concocted a requirement that duties must be

---

[3] The relevant section of the Handbook is attached hereto as Exhibit 3.

"incidental to the regular duties" of the tipped employee in order for the tip credit to apply. Moreover, the DOL imposed a 20% limitation on "general preparation work or maintenance" activities, regardless of whether those activities are a normal aspect of the tipped occupation. Thus, the Handbook forces the square peg of restaurant employment – in which duties in occupations overlap and employees perform many different types of duties throughout a shift – through the round hole of the "dual jobs" framework, which is designed for people performing two or more entirely distinct, non-overlapping occupations.  This results in a standard bearing no reasonable relationship to the text or purpose of the FLSA described above.

### 4.  In 2009, The DOL Rewrote Its Approach To The "Dual Jobs" Issue.

In 2009, the DOL once again opined on this topic, addressing some of the confusion that had arisen as courts grappled with the dual jobs regulation and Section 30d00(e) of the Handbook.  In this opinion letter, the DOL specifically stated that it "agree[d] that the current FOH [Handbook] sections addressing the tip credit have resulted in some confusion and inconsistent application and, as a result, may require clarification."  The DOL then fundamentally rewrote its entire approach to dual jobs, and *rejected* its previous "20% rule":

> ***We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties*** and all other requirements of the Act are met. . . .  Accordingly, we believe that the determination that a particular duty is part of a tipped occupation should be made based on the following principles:
>
> • Duties listed as core or supplemental for the appropriate tip-producing occupation in the Tasks section of the Details report in the Occupational Information Network (O*NET) http://online.onetcenter.org or 29 C.F.R. § 531.56(e) shall be considered directly related to the tip-producing duties of that occupation.  *No limitation shall be placed on the amount of these duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers of for a reasonable time immediately before or after performing such direct-service duties.*

13

- Employers may not take a tip credit for time spent performing any tasks not contained in the O*NET task list.  We note, however, that some of the time spent by a tipped employee performing tasks that are not listed in O*NET may be subject to the de minimis rule contained in Wage and Hour's general FLSA regulations at 29 C.F.R. § 785.47.

These principles supersede our statements in FOH § 30d00(e).  A revised FOH statement will be forthcoming.

U.S. DOL, Wage and Hour Division, Opinion Letter FLSA2009-23, 2009 DOLWH LEXIS 27 (Jan. 16, 2009) (emphasis added).  The tasks listed in the O*NET tasks list for waiters and waitresses include many of the duties that Plaintiffs are alleging are "non-tipped" duties, including cooking food, cleaning facilities and equipment, preparing foods for cooking or serving, stocking serving stations with food or supplies, arranging tables and dining areas, and collecting dirty dishes.  This guidance fundamentally rewrote the DOL's approach to dual jobs.

To make matters even more confusing, the DOL "withdrew" this letter less than two months later, in connection with a change in administration.  *See* 2009 DOLWH LEXIS 27 (Mar. 2, 2009).  In doing so, the DOL noted that the letter "may not be relied upon as a statement of agency policy," although it did not indicate whether it views the substance of the letter as correct.

### 5.  The DOL's 20% Rule Is Not Entitled To Deference From The Court.

In light of this winding history of the DOL's interpretation of the "dual jobs" regulation, the 20% rule contained in the Handbook is not entitled to any deference.

In *Auer v. Robbins*, 519 U.S. 452 (1997), the United States Supreme Court held that courts may defer to an agency's interpretation of its own regulations *unless* the interpretation is plainly erroneous or inconsistent with the regulation. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012), 132 S. Ct. at 2166.  *See also Christensen v. Harris Cty,* 529 U.S. 576, 588 (2000)) ("To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation.").  Here, the "20% rule"

was added to the Handbook with no advance notice in 1998, it was not subject to any notice and comment, and it was not accompanied by any explanation.  Indeed, the only detailed explanation ever provided with respect to the "20% rule" was in the 2009 opinion letter **rejecting** the rule. *See* DOL Op., 2009 DOLWH LEXIS 27 (Jan. 16, 2009).  When the DOL withdrew that opinion letter, it gave no explanation, only promising further guidance that never came.  For this reason alone, no deference is owed to the "20% rule."

Furthermore, the 20% rule is not entitled to any deference because it is inconsistent with the unambiguous text of the FLSA and its regulations.  It is well settled that deference is not owed to an agency interpretation of a regulation when the interpretation is plainly erroneous or inconsistent with the regulation. *Smithkline*, 132 S. Ct. at 2166.  Here, as detailed above, the 20% rule is not contained in the FLSA, its legislative history or its regulations.  Even more importantly, the concept of dividing the duties of servers into two groups (duties that generate tips and those that do not) and then aggregating the allegedly non-tipped duties and determining whether it exceeds 20% of the total duties for the week is in direct conflict with the regulation. *See Montijo*, 2015 U.S. Dist. LEXIS 41848, at *26-27 (finding that the Handbook's 20% rule "is not persuasive because it does not interpret the regulation but purports to add additional requirements which is the province of Congress").  The "dual jobs" regulation distinguishes **only** between a worker who is engaged in two occupations – one tipped and the other non-tipped – and a worker who is engaged in a single occupation, which may involve both tip-producing duties and non-tip-producing duties.

Ultimately, as federal courts in Ohio and around the country have recognized, nothing in the FLSA or its regulations limits the amount of time a tipped employee may spend on any particular activity within the tipped occupation of "server."  One passing statement in the

Handbook does not override the FLSA or its regulations, nor is it entitled to any deference, since: (1) the Handbook is not to be used as a device for establishing interpretative policy; (2) the 20% rule was not subject to notice and comment rulemaking; (3) the 20% rule is inconsistent with the FLSA, its legislative history, and its regulations; and (4) the DOL's view on this issue has been dizzyingly inconsistent, and it has even rejected this "rule" in a 2009 opinion letter.

By engaging in such a chaotic approach to the dual jobs regulation, the DOL has forfeited any measure of deference by the courts on its interpretation of the regulation and its creation of both the "20% rule" and the idea that employees in a tipped *occupation* must have their daily activities scrutinized task-by-task to determine whether the tip credit can apply to specific minutes or seconds in each shift. *See, e.g.*, *SmithKline*, 132 S. Ct. at 2166-67 (2012) (giving no deference to the DOL's interpretation of its own regulations regarding the outside salesperson exemption because, among other things, the DOL's position had shifted over time).

### C.     COURTS HAVE REJECTED PLAINTIFFS' "DUAL JOBS" CLAIM

Given the DOL's inconsistent approach to the "dual jobs" regulation, many courts have rejected the claim brought by Plaintiffs, including the 20% rule and their claim that *all* time spent performing "unrelated" tasks by tipped workers must be paid the minimum wage.

For example, in *Pellon v. Business Representation International, Inc.*, the plaintiffs contended that time spent performing "non-tipped" duties as a skycap (individuals who meet airline travelers curbside to assist them with luggage) should be compensated at the regular minimum wage rate, rather than the tip credit wage rate.  The plaintiffs relied on the dual job regulation to support their claim.  However, the Eleventh Circuit rejected the plaintiffs' analysis as unworkable and inappropriate.  The court found that "[t]he duties that Plaintiffs have performed in this case are not those of another occupation, even if there is some overlap among

tasks between different occupations." *Pellon*, 528 F.Supp.2d at 1313.  Turning to the practical

problems inherent in trying to apply the 20% rule, the court observed:

> ***[A] determination whether 20% (or any other amount) of a skycap's time is
> spent on non-tipped duties is infeasible***.  In fact, several of the plaintiffs
> themselves have admitted that dividing their workday among the various tasks
> they perform is impractical or impossible.
>
> ***Permitting Plaintiffs to scrutinize every day minute by minute, attempt to
> differentiate what qualifies as tipped activity and what does not, and adjust their
> wage accordingly would create an exception that would threaten to swallow
> every rule governing (and allowing) for tip credit for employers***.  First of all,
> ruling in that manner would present a discovery nightmare.  Of greater concern is
> the fact that under the reasoning proffered by Plaintiffs, nearly every person
> employed in a tipped occupation could claim a cause of action against his
> employer if the employer did not keep the employee under perpetual surveillance
> or require them to maintain precise time logs accounting for every minute of their
> shifts. The threshold issues are also unsolvable: for instance, how far from the
> curb could Plaintiffs even walk before they are too far to be considered tipped
> employees for that period?

*Id.,* at 1313-14 (emphasis added). The Eleventh Circuit affirmed summary judgment in favor of

the employer, based on "the district court's well-reasoned order."  291 Fed. Appx. 310.

The United States District Court for the Northern District of Indiana also rejected

Plaintiffs' theory that duties performed by a tipped employee that are "outside" of the tipped

occupation must be paid at the non-tipped minimum wage rate.  *Roberts v. Apple Sauce, Inc.*,

945 F. Supp. 2d 995 (N.D. Ind. 2013).  In *Roberts,* as in this case, the plaintiff relied on the dual

jobs regulation to support her claim.  *Id.*, at 1000.  In rejecting the plaintiff's claim, the court

held that the regulations and interpretive guidance

> lend no merit to the Plaintiff's proposition that duties like food preparation and
> general cleaning around the dining room cannot be incidental to the regular duties
> of a server and therefore must be compensated at minimum wage regardless of the
> percentage of time the employee spends on such duties or whether the duties are
> generally assigned to servers.

*Id.,* at 1002.

Similarly, in *Schaefer v. P.F. Chang Bistro*, 2014 U.S. Dist. LEXIS 10544 (D. Ariz. Aug. 1, 2014, the court rejected the plaintiff's claim that P.F. Chang's violated the minimum wage provision by paying servers the tip credit wage rate for time spent performing non-tipped duties. In *Schaefer*, the plaintiff alleged that servers spent more than 20% of their time performing non-tipped duties. *Id.* at *5. Nonetheless, the court held that the plaintiff failed to state a claim under the FLSA because he could not show that he was paid below the minimum wage in any workweek. *Id.,* at *16-19. Additionally, the court declined to give deference to the DOL's 20% rule because the dual jobs regulation itself does not cap the amount of hours servers may spend performing non-tipped duties before somehow becoming dual employees. *Id.* at *21 n. 6.

More recently, in a series of cases filed against Denny's, IHOP, and Landry's, all alleging that servers spent more than 20% of their time performing non-tipped duties and therefore the employer was not permitted to take a tip credit, the United States District Court for the District of Arizona rejected the 20% rule and dismissed the plaintiffs' claims. *See Richardson*, 2015 U.S. Dist. LEXIS 35008. The court explained:

> § 531.56(e) is not ambiguous. The dual jobs regulatory framework identifies an employee performing two or more entirely distinct, non-overlapping jobs. The facts do not present a situation contemplated in the regulation regarding "dual jobs" in which an individual is assigned two identifiable, separate occupations. Richardson was engaged in one occupation, server. Section 531.56(e) specifically allows a server to engage in incidental related duties. Thus, the server occupation inherently includes side work. ***The regulation does not identify this "duties" dichotomy or cap incidental duties at 20%.*** Based on the regulation, the Court need not identify the duties that Richardson performed in her server occupation and then classify some as related tipped duties and some as non-related non-tipped duties, and then implement a different occupational standard for the non-tipped duties as compared with her tipped occupation server duties.

*Id.*, at *19-20 (emphasis added). Referring to the Handbook as a "sub-regulation," the court further found that:

> the sub-regulation is neither persuasive nor entitled to deference for several reasons.

18

First, it is undisputed that the DOL's Wage and Hour Division in its opinion letters regarding the dual jobs regulation has inconsistently provided guidance, first taking one position, then reversing course, reversing course again, then withdrawing the original position. . . . By engaging in such an inconsistent approach in its opinions regarding the dual jobs regulation, § 531.56(e), the DOL's 1988 sub-regulation on the same issue is neither persuasive nor entitled to deference.

Next, the DOL sub-regulation does not interpret § 531.56(e) but arbitrarily adds additional requirements to it. . . ***The Court . . . will not give deference to a policy having the net effect of allowing a server to do nothing during slow periods at a restaurant or require the restaurant to pay the server additional sums to help out around the restaurant. The law does not require that result.***

*Id*. (citations omitted, emphasis added).[4] *See Kirchgessner,* [Landry's], 2016 U.S. Dist. LEXIS 1337 (D. Ariz. Jan. 4, 2016) (same); *Montijo* [IHOP], 2015 U.S. Dist. LEXIS 41848 ("The Court agrees . . . that the server occupation and its side work necessarily includes cleaning duties in a restaurant. [The plaintiff's] suggestion of a system requiring that servers keep track of their tasks on a minute-by-minute basis and then determine tipped/non-tipped and related/non-related to the server occupation in order to determine wage payments is unworkable."); *Townsend v. BG-Meridian, Inc.*, 2005 U.S. Dist. LEXIS 45200, *17-20 (D. Okla. Nov. 7, 2005) (applying tip credit to waitress whose "primary duty" was a waitress but spent time performing non-tipped duties; "a tipped employee's status does not change simply because she is called upon to perform non-tipped duties related to her job").

Most recently, in *Craig v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 80489 (S.D. Ohio June 21, 2016), the Southern District of Ohio (the sister court to this Court) squarely rejected the plaintiffs' claim – like Plaintiffs' claim in this case – that the employer violated the FLSA because the tipped employees were required to spend "more than 20 percent of their

---

[4] In *Richardson*, the court further concluded that adopting the Handbook may constitute an unconstitutional breach of separation of powers, because it permits the executive branch to legislate, rather than interpret, the law. 2015 U.S. Dist. LEXIS 35008, at *25 (explaining that "to adopt the sub-regulation by giving it deference would require this Court to set aside the constitutional principles of separation of powers, which the Court will not do"). *See also Montijo*, 2015 U.S. Dist. LEXIS 41848, at *33 (same).

compensated time performing incidental, non-tipped duties," and granted the employer's motion to dismiss the plaintiffs' complaint.

At the outset, the court in *Craig* dismissed the plaintiffs' "tip credit" claim outright because – between the employer's payment of the tip-credit rate and the tips the plaintiffs received from their customers – the plaintiffs had received total wages in excess of the statutory minimum wage.  The court explained, "[a] plaintiff who fails to allege and show that his pay rate for the workweek was below the statutory minimum wage fails to establish an FLSA violation." *Id*., at *9 (citations omitted).  According to the court,

> while Plaintiffs allege the hourly rates at which Defendants compensated them, they have not alleged that their overall hourly rate, including tips, did not meet or exceed the statutory minimum wage. Therefore, the second amended complaint on its face fails to state a violation of the statutory minimum wage requirement.

*Id*.

The court also rejected the plaintiffs' claim that they should not have been required to perform purported "non-tipped" work at the tip-credit rate of pay:

> to the extent Plaintiffs complain about being required to perform non-tipped work, **their non-tipped work was squarely within the regulation's definition of duties incidental to tipped employment. Therefore, their performance of non-tipped duties does not transform them into non-tipped employees nor does the mere fact that they performed duties incidental to their tipped employment deprive Defendants of the ability to take advantage of the tip credit**.

*Id*., at *10. (citing 29 C.F.R. § 531.56(e)) (emphasis added).  On these grounds, the court in *Craig* found that the plaintiffs' complaint failed to state a claim for any violation of the FLSA or of any state minimum wage laws. *Id*., at *11.

In this case, Plaintiffs do not allege that they were engaged in two distinct occupations, one tipped and one not tipped.  While Plaintiffs contend that they were required to perform other duties in addition to what they consider to be their server duties, they allege no facts to indicate

that those duties were anything other than incidental to their server duties. In other words, Plaintiffs allege no facts to distinguish themselves from the waitress and counterman examples set forth in the FLSA's regulations. Accordingly, Plaintiffs meet the FLSA's requirements for application of the tip credit.

### D. THE COURT SHOULD FOLLOW THE PLAIN LANGUAGE OF THE FLSA, THE REGULATIONS, *CRAIG* AND OTHER CASES AND DISMISS PLAINTIFFS' CLAIM REGARDING TIME SPENT PERFORMING PURPORTED "NON-TIPPED" DUTIES.

There is a reason why, even after thirty years of grappling with the issue, the DOL still cannot articulate a clear, workable approach to applying the "dual jobs" concept to single jobs in the restaurant industry: the entire inquiry itself is misplaced. The flaw is the very concept of trying to parse a single occupation into tipped and non-tipped components. That is where the endeavor departs from the plain language of the FLSA.

For purposes of this Motion, even taking as true Plaintiffs' allegations that they were required to perform so-called "non-tipped" tasks (whatever such duties may be) while they worked as servers and bartenders, Plaintiffs do not state a viable claim. The FLSA's regulations acknowledge that there is nothing improper about tipped employees performing these kinds of tasks. Indeed, 29 C.F.R. § 531.56 (e) expressly lists "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," as well as "prepar[ing] . . . short orders or . . . tak[ing] a turn as a short order cook" as examples of *properly tipped* work.

Plaintiffs' Complaint in no way suggests that Winking Lizard tasked Plaintiffs with duties that are unusual or different from how restaurants across the country assign work to tipped employees, whether now or since the 1960s, when the FLSA first applied to restaurant workers. Congress was surely aware of practices in the industry when it authorized the tip credit for employees in tipped *occupations*.

21

Ultimately, Plaintiffs' claim would put this Court in the position of trying to judge whether and when a server who takes thirty seconds to take trash to the kitchen somehow ceases to be a server and instead becomes a non-tipped "maintenance man" for those seconds.  Similarly, it would require this Court to evaluate exactly when washing dishes crosses the line from what is expressly authorized in the regulations to where it ceases to be tipped "server" work and becomes non-tipped "dishwasher" work, and when a server takes 45 seconds to check whether the restroom has toilet paper, soap, and paper towels.  In the end, the practicalities of applying this rule are simply unworkable.  *See, e.g., Schaefer v. Walker Bros. Enterprises, Inc.*, ---F.3d----, 2016 U.S. App. LEXIS 12985 (7th Cir. July 15, 2016) (quoting *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880 (2014))  (holding that the FLSA does not "convert federal judges into time-study professionals" who must account for every minute, and when the "vast majority of time qualifies for a particular treatment under the Act, that treatment can be applied to the entire period").

In contrast to Plaintiffs' claim, restaurants have for decades employed a team-oriented approach whereby many tasks overlap various positions, such that individuals in two, three, or more job categories might perform the same task at various points in the same workweek, or in the same shift, or even at the same time.  No restaurant requires its tipped employees to clock in and out dozens or hundreds of times per day to register the transition from one type of task to another. The idea that Congress would impose such a monstrous record-keeping obligation on restaurants or their employees is ludicrous, as is the view that, in enacting the tip credit provision in the FLSA, Congress somehow intended to radically alter the job duties of millions of restaurant workers across the country or to put courts in the role of micro-managing every aspect of a tipped occupation employment in restaurants task-by-task.

22

Allowing Plaintiffs' claim to proceed invites exactly that kind of absurd result.  If Plaintiffs are allowed to proceed with this claim, then the natural consequence is that restaurants will be forced either (1) to segregate all "non-tipped" duties (whatever that even means), and ensure that tipped employees never perform them; or (2) to maintain detailed records of exactly how tipped employees spend their time, task by task, in very short increments of time (often a minute or less) throughout a shift, for every single shift *and* determine whether these tasks are "related" or "unrelated" to their duties as a server or bartender.  That is arguably the only kind of record-keeping that could plausibly provide a defense to these kinds of claims, and even there one would anticipate the common refrain in wage and hour litigation that the records are not accurate and thus that there is a fact issue for trial.

As such, Plaintiffs' claim is thus contrary to both the letter and the spirit of the FLSA, and it should be rejected.

## CONCLUSION

For these reasons, each of the claims presented in the Plaintiffs' Complaint fails as a matter of law, and therefore Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

*/s/ Daniel L. Messeloff*
Daniel L. Messeloff (0078900)
James M. Stone (0034691)
Michael J. Kozimor (0092376)
Jackson Lewis P.C.
Park Center Plaza I, Suite 400
Cleveland, Ohio  44131
Telephone:  (216) 750-0404
Fax:  (216) 750-0826
Email:Daniel.Messeloff@jacksonlewis.com
        James.Stone@jacksonlewis.com
        Michael.Kozimor@jacksonlewis.com

Attorneys for Defendants

23

## L.R. 7.1(f) CERTIFICATION

The undersigned hereby certifies that this case has not been assigned to any track.  This memorandum adheres to the extension of the page limitation set forth in L.R.7.1, as set forth by the Court in its Order dated September 23, 2016. (Dkt. # 12)

*/s/ Daniel L. Messeloff*
Daniel L. Messeloff

4812-3213-8809, v. 1

24