IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VICTORIA COOPER, *et al.* | Case No. 1:16-cv-01513-DAP |
| Plaintiffs | |
| *v.* | Judge Dan Aaron Polster |
| WINKING LIZARD, INC., *et al.* | |
| Defendants | |

**INDEX OF EXHIBITS TO
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AND
FOR APPROVAL OF SERVICE AWARDS AND ATTORNEY'S FEES AND COSTS**

Settlement Agreement.....................................................................................................................1

[Proposed] Order Approving Settlement, Approving Service Awards and Attorney's Fees and Costs.....................................................................................................................................................2

Declaration of Douglas M. Werman ...............................................................................................3

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by, between, and among Tyrone Kenner, Christopher Sanford, Tayler Downs, and Victoria Cooper ("Named Plaintiffs"), on behalf of themselves and other Opt-In Plaintiffs (collectively, "Plaintiffs"), and Defendants Winking Lizard, Inc., Winking Lizard of Avon, Inc., Winking Lizard of Bedford Heights, Inc., Winking Lizard of Bethel Rd., Inc., Winking Lizard of Brunswick, Inc., Winking Lizard of Columbus, Inc., Winking Lizard of Copley, Inc., Winking Lizard of Coventry, Inc., Winking Lizard of Gateway, Inc., Winking Lizard of Independence, Inc., Winking Lizard of Lakewood, Inc., Winking Lizard of Macedonia, Inc., Winking Lizard of North Canton, Inc., Winking Lizard of Northwest Columbus, Inc., Winking Lizard of Peninsula, Inc., and Winking Lizard of Westerville, Inc. (collectively, "Defendants").

1.      DEFINITIONS

The following terms, when used in this Agreement, have the meanings set forth below, except when they are otherwise or more precisely defined in another section.

(a)      "Action" means the civil action filed in the United States District Court, Northern District of Ohio captioned *Victoria Cooper, et al v. Winking Lizard, Inc., et al,* Case Number 1:16-cv-01513-DAP.

(b)      "Court" means the United States District Court, Northern District of Ohio.

(c)      "Effective Date" means the date the Court enters an Order approving this Agreement, in the absence of any Objection.

(d)      "Named Plaintiffs" means Tyrone Kenner, Christopher Sanford, Tayler Downs, and Victoria Cooper.

1

(e)      "Opt-In Plaintiffs" means the individual Plaintiffs (other than the Named Plaintiffs) who filed Consents to Join the Action.

(f)      "Parties" means the Plaintiffs and Defendants, collectively.

(g)      "Plaintiffs" means the Named Plaintiffs and Opt-In Plaintiffs, collectively.

(h)      "Plaintiffs' Counsel" means Werman Salas P.C., The Bendau Law Firm, PLLC and James L. Simon.

(i)      "Released Parties" means Defendants and their former and present parents, subsidiaries, and affiliated corporations, and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives.

2.      BACKGROUND

The Action was filed on June 17, 2016 by Named Plaintiffs Tyrone Kenner, Christopher Sanford, Tayler Downs, and Victoria Cooper, who were formerly employed as servers by the Defendants.  Named Plaintiffs alleged that the Defendants paid them, and other similarly-situated servers and bartenders at Defendants' restaurants, a sub-minimum hourly rate of pay (the "tip-credit rate"), (1) while requiring them to perform improper types, or excessive amounts, of non-tipped job duties; and (2) while requiring them to reimburse Defendants from their tips for customer walkouts, and that these practices violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Defendants deny violating the FLSA and deny that they failed to pay tipped employees all owed wages.

On September 28, 2016, Defendants filed a Motion for Judgment on the Pleadings. On October 28, 2016, Plaintiffs filed their Response to Defendants' Motion for Judgment on the Pleadings. On November 4, 2016, Plaintiffs' filed an Unopposed Motion to File A First Amended Complaint and a Motion for Step One Notice Pursuant to the Fair Labor Standards

2

Act.  On November 16, 2016, the Court denied Defendants' Motion for Judgment on the Pleadings as Moot.

On November 7, 2016, the Court granted Plaintiffs' Motion to File a First Amended Complaint.  On November 21, 2016, in lieu of Defendants' responding to Plaintiffs' Motion for Step One Notice, the Parties filed a Joint Stipulation to allow Step One Notice. On November 22, 2016, the Court entered an order granting the Parties' Joint Stipulation to allow Step One Notice Pursuant to the Fair Labor Standards Act. On December 5, 2016, before either party served formal written discovery requests, Defendants agreed to review time and payroll records for Named Plaintiffs, and produce a compilation of that data in Excel format along with opening, closing and sidework lists for the locations they worked. On December 7, 2016, the Parties filed a Joint Motion to Approve Fair Labor Standards Act Notice and Consent Forms and Distribution Program. Also on December 7, 2016, the Court entered an order granting the Parties' Joint Motion to Approve Fair Labor Standards Act Notice and Consent Forms and Distribution Program. Plaintiffs' Counsel mailed Section 216(b) opt-in notice to current and former servers and bartenders who were employed by any of Defendants' restaurants on or after three years before the Court's Order dated December 7, 2016.  Including the Named Plaintiffs, one hundred and forty (140) individuals consented to join the Action.

On February 17, 2017, the Parties filed a Joint Proposed Litigation Schedule, which the Court approved the following day.  On February 21, 2017, Plaintiffs served Defendants with Requests for Production of Documents and Interrogatories. On March 30, 2017, Defendants served Objections and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents.

On April 19, 2017, the Court held a status conference at which it was agreed that Defendants would turn over time records for the 140 opt in Plaintiffs by June 1, 2017; Plaintiffs would submit a reasonable demand by June 30, 2017, and Defendants would submit a reasonable counter offer by July 17, 2017. On August 22, 2017, the Court entered an Order referring the case to the Magistrate Judge for mediation to conclude by the end of September. On September 15, 2017, the Parties attended a settlement conference and reached a settlement.

3.  <u>REASONS FOR SETTLEMENT</u>

(a)     Plaintiffs' Counsel has diligently and thoroughly investigated the facts of the Action, including through detailed interviews of Named Plaintiffs and Opt-In Plaintiffs. Plaintiffs' Counsel used those interviews and analysis of Defendants' time and pay records to calculate the maximum gross amount that each Plaintiff might recover in the litigation.  Based on those calculations, Plaintiffs' Counsel believes that the settlement amount and other terms set forth in this Agreement represent the resolution of a bona-fide dispute between the Parties, is fair and reasonable, and is in the best interests of Plaintiffs.  Plaintiffs' Counsel also has taken into account the uncertainty and risks inherent in any litigation, especially in complex collective actions like this one.

(b)     Although the Parties do not abandon the positions they took in the Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  In light of these realities, the Parties believe that this Agreement, which was negotiated at arms'-length between experienced counsel, is fair, reasonable and the best way to resolve the disputes between and among them.

4.  <u>STATEMENT OF NO ADMISSION</u>

(a)     Defendants deny all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective

allegations asserted in the Action.  Defendants have agreed to resolve the Action via this Agreement, but to the extent the Court does not dismiss the Action with prejudice, each side will bear its own fees and costs except as otherwise agreed in this Agreement, Defendants do not waive, but rather expressly reserve, all rights to challenge any and all claims and allegations asserted by the Plaintiffs in the Action upon all procedural and substantive grounds, including without limitation the ability to challenge collective action treatment on any grounds and to assert any and all other potential defenses or privileges. Plaintiffs and Plaintiffs' Counsel agree that Defendants retain and reserve these rights, and they agree not to take a position to the contrary. Specifically, Plaintiffs and Plaintiffs' Counsel agree that, if the Action were to proceed, they would not argue or present any argument, and hereby waive any argument that, based on this Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this Agreement, Defendants should be barred from pursuing decertification of the conditionally certified collective action, or from asserting any and all other potential defenses and privileges. This Agreement shall not be deemed an admission by, or a basis for estoppel against, Defendants that certification pursuant to 29 U.S.C. § 216(b) in the Action is proper or cannot be contested on any grounds. Additionally, neither the Agreement nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any released claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (ii) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.

5.     MONETARY TERMS OF SETTLEMENT

(a)     The "Total Settlement Payment" is $150,000.

5

(b)      The Total Settlement Payment shall be used to pay:

    (i)      Settlement Payments to the Named Plaintiffs and Opt-In Plaintiffs in the total amount of $60,000;

    (ii)      The attorneys' fees, costs, and litigation expenses of Plaintiffs' Counsel, in the total amount of $82,500; and

    (iii)      Service Awards, to Named Plaintiffs Tyrone Kenner and Victoria Cooper in the amount of $2,500 each and lesser Service Awards to Named Plaintiffs Christopher Sanford and Tayler Downs in the amount of $1,000 each (totaling $7,000.00); and

    (iv)      Settlement Administration Costs in the amount of $500.00.

(c)      Under no circumstance will Defendants' settlement liability, other than Defendants' share of employer payroll taxes, exceed the Total Settlement Payment.

(d)      From the Total Settlement Payment, the following will be deducted to determine the "Net Settlement Fund":

    (i)      "Service Awards" to the Named Plaintiffs Tyrone Kenner and Victoria Cooper in the amount of $2,500 each and lesser Service Awards to Named Plaintiffs Christopher Sanford and Tayler Downs in the amount of $1,000 each (totaling $7,000.00);

    (ii)      Attorneys' fees, costs, and litigation expenses of Plaintiffs' Counsel, in the total amount of $82,500.

    (iii)      The "Settlement Administration Costs" in the amount of $500.00, to be paid to Plaintiffs' Counsel, for administering and mailing Settlement Payment checks.

(e)      The Net Settlement Fund will be divided among the Plaintiffs *pro rata* based on individual computations of unpaid minimum wages, to determine each Plaintiff's Settlement

Payment.  Each Plaintiff's Settlement Payment shall be calculated according to the following criteria:

(i)        For each Plaintiff, the following formula shall be applied to determine the gross amount of minimum wages, using time and payroll documents previously produced by Defendants or to be promptly produced by Defendants (if not already done so):

((Applicable Federal Minimum Wage Rate – Paid Tip Credit Rate of Pay) * Total Hours Paid at the Tip Credit Rate) * 35% = Total Minimum Wages.

(ii)       The Net Settlement Fund shall be divided by the sum of all Plaintiffs' Total Minimum Wages.  The quotient, expressed as a percentage, shall represent the Pro Rata Factor.

(iii)      Each Plaintiff's Total Minimum Wages shall be multiplied by the Pro Rata Factor to determine each Plaintiff's Settlement Payment.  However, the minimum settlement amount for any Opt-In Plaintiff shall be $25.00.

(iv)      Each Plaintiff's Settlement Payment, calculated in accordance with subparagraphs (i) through (iii) above, is identified on Exhibit A to this Agreement, which has been or will be prepared by Plaintiffs' Counsel.

(f)       Each Plaintiff's Settlement Payment shall be delivered in two separate checks, allocated as follows:

(i)        One-half of each Plaintiff's Settlement Payment will represent each Plaintiff's unpaid minimum wages.  Regular employee payroll deductions shall be taken out of this portion of each Plaintiff's settlement payment by Defendants.  Federal income tax on that amount will be withheld for all Plaintiffs in accordance with the withholding elections on file with Defendants.  State income tax will be withheld according to applicable state withholding

requirements.  Defendants shall timely issue and mail to each Plaintiff an IRS Form W-2 for this portion of the Settlement Payment for the year in which the Settlement Payment check.

(ii)      One-half of each Plaintiff's Settlement Payment will represent each Plaintiff's liquidated damages.  In the case of the Named Plaintiffs, their Service Award Payments will also be added to this check.  Payroll deductions and income taxes shall not be taken from this portion of each Plaintiff's Settlement Payment, or from any of the Service Award payments.  Defendants shall timely issue and mail to each Plaintiff who negotiates a Settlement Payment check an IRS Form 1099 for the liquidated damages portion of each Settlement Payment for the year in which the Settlement Payment check is negotiated.  Defendants shall also timely issue and mail to each Named Plaintiff a Form 1099 for their Service Awards (whether a separate 1099, or whether the Service Awards are included on a 1099 along with this portion of the Settlement Payment).

(iii)      The back of each check to each Plaintiff may, at Defendants' option, contain the following limited endorsement:

> I agree to release all Fair Labor Standard Act claims that were brought in the case *Cooper v. Winking Lizard, et al.* (the "Action"), including claims for minimum wages, liquidated damages, penalties, attorney's fees and costs, and any parallel state minimum wage law claims, arising during the three years prior to when my consent to join this Action was filed, through the Effective Date of the Settlement Agreement.

DATED: _____        Signature: _____

(g)      Defendants shall be responsible for the employer's portion of all applicable payroll taxes.  Other than the withholding and reporting requirements herein, Plaintiffs shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Agreement.

(h)     To the extent permitted by law, in no event shall any Settlement Payment to a Plaintiff or any Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

(i)     Defendants shall determine the employer's share of payroll employment taxes on Settlement Payments to Plaintiffs, and shall communicate such amount to Plaintiffs' Counsel with an explanation of the calculations.  In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties shall meet and confer in good faith in an attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination.  Defendants shall timely remit and report the applicable portions of the payroll tax payments to the appropriate taxing authorities.

(j)     If it is subsequently determined by a tax authority that Named Plaintiffs or any Opt-In Plaintiff owes any additional taxes on any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the Plaintiff(s) and the tax authorities, and that Defendants will not be responsible for the payment of such taxes, including any interest and penalties. No payments made to Plaintiff(s) in this Agreement will be considered wages for purposes of calculating, or recalculating, benefits provided by Defendants under the terms or conditions of any employee benefit plan.

9

6.  <u>TRAINING</u>

(a)  Within sixty (60) days of the Effective Date, Defendants shall conduct a training for all their tipped employees that teaches, at a minimum: 1) that tipped employees are never to reimburse Defendants for bills incurred by customers who walkout out without paying them; and 2) the location and use of the "Walkout" button on the Point of Sale system.

(b) Within fourteen (14) days after Defendants complete delivery of the training described in preceding subparagraph, Defendants will provide a certification to Plaintiffs setting forth the date and time the training was delivered, identifying each location where the training was delivered, and certifying that the training is complete in accordance with the preceding subparagraph.

7.  <u>RELEASE OF CLAIMS</u>

(a)  In exchange for the monetary and nonmonetary terms set forth above, Opt-In Plaintiffs shall release and discharge the Released Parties from:

All Fair Labor Standards Act ("FLSA") claims that were brought in the Action, and any parallel state minimum wage law claims, arising during the three years prior to when Plaintiff's consent to join this Action was filed, through the Effective Date of the Settlement Agreement. Named Plaintiffs and Plaintiffs' Counsel represent that they have authority to bind Opt-In Plaintiffs to this release.

(b)  In exchange for their Service Awards, following the Court's approval of this Settlement Agreement, Named Plaintiffs shall release and discharge the Released Parties from:

(i)  all claims raised or which could have been raised in the Action;

(ii)  all claims, actions, causes of action, class allegations, demands, damages, costs, liabilities, debts, obligations, attorneys' fees, loss of wages and benefits, loss of earning capacity, mental anguish, pain and suffering, or other relief permitted to be recovered or related to, or in any way growing

10

out of Named Plaintiffs' employment with, treatment at, wages from, or separation of employment from Defendants;

(iii)    all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, the National Labor Relations Act, as amended, the Equal Pay Act, the Fair Labor Standards Act, as amended, the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, as amended, the Family and Medical Leave Act, 42 U.S.C. § 1981, the Employee Retirement Income Security Act, as amended, and any other Federal, State, or municipal statute, order, regulation, or ordinance on account of, or any damages or injury related to or in any way growing out of Named Plaintiffs' employment with, treatment at, compensation from, or separation of employment from Defendants; and

(iv)    all claims arising under common law, including, but not limited to, tort claims or breach of contract claims (express or implied), intentional interference with contract, intentional infliction of emotional distress, negligence, defamation, violation of public policy, wrongful or retaliatory discharge, tortious interference with contract, and promissory estoppel, on account of, or any damages or injury related to or in any way growing out of Named Plaintiffs' employment with, treatment at, compensation from, or separation of employment from Defendants.

8.    <u>ATTORNEYS' FEES AND EXPENSES</u>

(a)    From the Total Settlement Payments, Plaintiffs' Counsel will receive attorneys' fees, costs, and litigation expenses in the total amount of $82,500;

(b)    Plaintiffs and Plaintiffs' Counsel understand and agree that any fee payments made under Section 7 of this Agreement will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Plaintiffs, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Action.  Named Plaintiffs and Plaintiffs' Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge Defendants of any liability for such fees and/or costs. Furthermore, Named Plaintiffs and Plaintiffs' Counsel represent and warrant that no attorney, other than Plaintiffs' Counsel, has any attorney's fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the Action, and that the terms of this Agreement shall fully

satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Action.

(c)    Defendants hereby irrevocably and unconditionally agree that they will not object or comment upon Plaintiffs' application for attorneys' fees and costs.

9.    SETTLEMENT TIMELINE

The Parties agree to follow the following timeline for the completion of the settlement process and the dismissal of this Action:

(a)    Issuance of Settlement Payments, Service Award and Fees to Plaintiffs' Counsel:

(i)    Within fourteen (14) days after the Effective Date, Defendants will mail to Plaintiffs' Counsel the Settlement Payment checks for each Plaintiff, in the amounts listed on Exhibit A to this Agreement.  These checks shall be negotiable by Plaintiffs for 150 days from the date they were issued.  Plaintiffs' Counsel shall then mail these Settlement Payment checks to Plaintiffs. With the Settlement Payment checks, Plaintiffs' Counsel shall include a letter drafted by Plaintiffs' Counsel with each check to each Plaintiff explaining the terms of the settlement.

Within fourteen (14) days after the Effective Date Defendants will mail to Plaintiffs' Counsel, made payable as Plaintiffs' Counsel directs, the check for Plaintiffs' Counsel's attorneys' fees and costs.

(ii)    Within one hundred and seventy-five (175) days after the last check issue date, Defendants' will provide Plaintiffs' Counsel with a report identifying all unnegotiated checks.

(iii)    Funds from Settlement Payments or Service Awards that are not negotiated within one hundred and fifty (150) days after the last check issue date shall escheat to the State of Ohio within one hundred and ninety-five (195) days after the check issue date.

12

(b)  <u>Dismissal of Action</u>:  No later than seven (7) days after the Effective Date, Plaintiffs shall file a stipulation to dismiss the Action, each party to bear its own fees and costs. The stipulation to dismiss shall be without prejudice and shall convert, without further action of the Court, to dismissal with prejudice one hundred eighty-five (185) days after it is filed.

10.  <u>MUTUAL FULL COOPERATION</u>

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Agreement. Defendants shall promptly provide Plaintiffs' Counsel time and payroll information for any Opt-In Plaintiff for whom such data was not previously provided.

11.  <u>CONSTRUCTION</u>

The terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between and among the Parties.  Accordingly, this Agreement is not to be construed in favor of or against any party by reason of the extent to which any party or its counsel participated in the drafting of the Agreement.

12.  <u>INTEGRATION</u>

This Agreement contains the entire agreement between the parties relating to the settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  There are no undisclosed side agreements between the Parties or their counsel.  No rights hereunder may be waived except in writing.

13.  <u>BINDING ON SUCCESSORS AND ASSIGNS</u>

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

13

14.    <u>MODIFICATION</u>

This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Agreement may not be discharged except by performance with its terms or by a writing signed by the Parties.

15.    <u>APPLICABLE LAW</u>

The terms of this Agreement shall be governed by and construed in accordance with Ohio law

16.    <u>RETENTION OF JURISDICTION</u>

The court shall retain exclusive jurisdiction with respect to the implementation and enforcement of the terms of this joint stipulation, and all parties submit to the jurisdiction of the court for purposes of implementing and enforcing the terms of this joint stipulation. The parties consent to Magistrate Judge Greenberg's jurisdiction for the purpose of ruling on Plaintiffs' unopposed motion for approval of this joint stipulation of settlement.

17.    <u>COUNTERPARTS</u>

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. Faxed, DocuSign, and .pdf signatures shall be treated as originals.

18.    <u>PARTIES' AUTHORITY</u>

The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the respective Parties to its terms and conditions.

By:_____

One of Plaintiffs' Attorneys

Douglas M. Werman
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

Clifford P. Bendau, II (OH No. 089601)
THE BENDAU LAW FIRM PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Telephone OH: (216) 395-4226
cliffordbendau@bendaulaw.com

James L. Simon (OH No. 89483)
6000 Freedom Square Dr.
Independence, OH 44131
Telephone: (216) 525-8890
Facsimile: (216) 642-5814
Email: jameslsimonlaw@yahoo.com

By:_____

One of Defendants' Attorneys

Vincent J. Tersigni (0040222)
James M. Stone (0034691)
Michael J. Kozimor (0092376)
JACKSON LEWIS P.C.
Park Center Plaza I, Suite 400
Cleveland, Ohio 44131
Telephone: (216) 750-0404
Fax: (216) 750-0826
Vincent.Tersigni@jacksonlewis.com
James.Stone@jacksonlewis.com
Michael.Kozimor@jacksonlewis.com
Telephone: (317) 489-6930
Facsimile: (317) 489-6931

Paul DeCamp
Epstein Becker Green, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Telephone:  (202)861-1819
Facsimile:  (202)861-3571
pdecamp@ebglaw.com

# EXHIBIT A

**Cooper v. Winking Lizard**
**Settlement Agreement - Exhibit A**

|  | Last Name | First Name | Settlement Award |
|---|---|---|---|
| 1 | Alcoorso | Stacy | $ 85.36 |
| 2 | Arencibia | Tracy | $ 25.00 |
| 3 | Austin | Bianca K. | $ 145.85 |
| 4 | Ball | Ashley | $ 213.41 |
| 5 | Bigam | Beau D. | $ 61.32 |
| 6 | Bills | Michelle | $ 1,301.69 |
| 7 | Blakeslee | Kevin | $ 856.69 |
| 8 | Boettner | Cara | $ 25.00 |
| 9 | Botts | Melissa | $ 578.13 |
| 10 | Bright | Amy | $ 766.01 |
| 11 | Bruno | Kristen | $ 1,412.65 |
| 12 | Butler | Darrell | $ 132.00 |
| 13 | Carrel | Cody | $ 145.65 |
| 14 | Castner | Donna | $ 25.00 |
| 15 | Chaves | Rachel | $ 505.64 |
| 16 | Clarke | Ashley M. | $ 1,313.54 |
| 17 | Collins | Anthony (Tony) | $ 405.65 |
| 18 | Columbro | Whitney | $ 25.00 |
| 19 | Condia | Mariah | $ 474.14 |
| 20 | Cooper | Victoria | $ 1,383.58 |
| 21 | Cottrell | Joshua | $ 25.00 |
| 22 | Coxe | Benjamin | $ 155.59 |
| 23 | Dallas | Ryan C. | $ 36.97 |
| 24 | DiGiando | Leah | $ 189.50 |
| 25 | D'Orazio-Lee | Barbara L. | $ 447.61 |
| 26 | Downs | Tayler | $ 2,042.02 |
| 27 | Dreger | Brittany | $ 57.81 |
| 28 | Duemey | Ashley | $ 286.66 |
| 29 | Duffield | Alexandra | $ 25.00 |
| 30 | Dugan | John | $ 105.45 |
| 31 | Duncan | Victoria | $ 25.00 |
| 32 | Dunnerstick | Ashley | $ 41.83 |
| 33 | Esposito | Ashlee | $ 250.34 |
| 34 | Fleck | Frances | $ 257.88 |
| 35 | Fumich | Laura | $ 1,671.84 |
| 36 | Gann | Crystal | $ 25.00 |
| 37 | George | Tonya | $ 247.62 |
| 38 | Giese | Jayne | $ 53.28 |
| 39 | Giordano | Heather | $ 209.21 |
| 40 | Green | Abigail | $ 222.52 |
| 41 | Hamilton | Brian | $ 25.00 |
| 42 | Hamm | James P. | $ 2,199.23 |

**Cooper v. Winking Lizard**
**Settlement Agreement - Exhibit A**

|    | Last Name | First Name | Settlement Award |
|----|-----------|------------|------------------|
| 43 | Harris | Danielle | $ 116.32 |
| 44 | Hartig | Armand | $ 284.57 |
| 45 | Hastings | Amanda M. | $ 321.63 |
| 46 | Hegyi | Dzsenifer | $ 25.00 |
| 47 | Helfand | Abby | $ 445.47 |
| 48 | Hendrix | Christina | $ 25.00 |
| 49 | Herbrock | Kevin R. | $ 129.22 |
| 50 | Hillyer | Breyann | $ 394.75 |
| 51 | Hoffman | Zachary | $ 373.76 |
| 52 | Homberg | Jennifer | $ 369.46 |
| 53 | Hughel | Hillary | $ 594.80 |
| 54 | Hughes (Debellis) | Elizabeth | $ 732.40 |
| 55 | Jatsek Jr. | William A. | $ 34.91 |
| 56 | Johnson | April | $ 247.69 |
| 57 | Johnson | Raeann | $ 514.14 |
| 58 | Jones | Karissa | $ 60.54 |
| 59 | Jones | Leah Z. | $ 25.00 |
| 60 | Jones | Tashina | $ 236.62 |
| 61 | Jones | Thomas | $ 104.23 |
| 62 | Jones | Brian | $ 878.73 |
| 63 | Kadervek | Brianna M. | $ 814.44 |
| 64 | Kadervek | Renee | $ 63.64 |
| 65 | Kenner | Tyrone | $ 560.69 |
| 66 | Klee | Wayne D. | $ 1,263.38 |
| 67 | Knapp | Brian | $ 2,048.97 |
| 68 | Knapp | Shaun | $ 509.77 |
| 69 | Kolk | Kelley | $ 1,004.99 |
| 70 | Kunsman | Jessica | $ 551.13 |
| 71 | Labastille | Carl-Henry | $ 25.00 |
| 72 | Lavisky | Annabella I. | $ 198.34 |
| 73 | Lawson | Nicole | $ 234.81 |
| 74 | Leslie | Alice Marie | $ 25.00 |
| 75 | Lipscomb | Charlene | $ 1,565.30 |
| 76 | Lombardi | Natalie A. | $ 731.45 |
| 77 | Mace | Jaclyn | $ 82.76 |
| 78 | Madden | Shannon | $ 1,299.89 |
| 79 | Maher | Kayla | $ 25.00 |
| 80 | Malek | Jennifer | $ 1,841.75 |
| 81 | Mardis | Mary A. | $ 269.59 |
| 82 | Mariage | Jaime | $ 70.31 |
| 83 | Mauriocourt | Stephen | $ 255.13 |
| 84 | Maxwell | Shannon | $ 57.30 |

**Cooper v. Winking Lizard**
**Settlement Agreement - Exhibit A**

|  | Last Name | First Name | Settlement Award |
|---|---|---|---|
| 85 | McKenna | Erica | $ 25.00 |
| 86 | McMahan | Jaime R. | $ 429.58 |
| 87 | Miles | Jessica | $ 25.00 |
| 88 | Mondozzi | Michelle | $ 270.62 |
| 89 | Morris | Antonio | $ 215.26 |
| 90 | Morris | Cindy | $ 25.00 |
| 91 | Morrow | Mackenzie | $ 107.56 |
| 92 | Murphy | Ciera | $ 206.71 |
| 93 | Nocar | Sarah | $ 233.45 |
| 94 | Nusbaum | Zachary R. | $ 534.62 |
| 95 | Oliver | Andrea | $ 25.00 |
| 96 | Paternite | Rebecca | $ 622.41 |
| 97 | Perkins | Jacklyn | $ 1,136.92 |
| 98 | Peters | Elizabeth | $ 589.00 |
| 99 | Pribich | Nicole | $ 612.74 |
| 100 | Reagh | Emily | $ 25.00 |
| 101 | Renfro | Lisa | $ 212.86 |
| 102 | Rennie | Stephanie | $ 68.93 |
| 103 | Reyes | Vanessa | $ 1,165.85 |
| 104 | Roach | Jessica | $ 55.61 |
| 105 | Roth | Alexis | $ 1,403.80 |
| 106 | Rumple | Brittany D. | $ 547.51 |
| 107 | Sandt | Karen | $ 58.49 |
| 108 | Sanford | Christopher | $ 871.37 |
| 109 | Scarborough | Jaclyn | $ 113.66 |
| 110 | Schlachter | Philip C. | $ 25.00 |
| 111 | Scislowski | Sheryl | $ 25.00 |
| 112 | Sethman | Amanda | $ 1,199.77 |
| 113 | Sierra | Alicia | $ 345.05 |
| 114 | Silac | Jonathan | $ 146.97 |
| 115 | Simcox | Sydney | $ 298.60 |
| 116 | Simon | Hannah | $ 821.31 |
| 117 | Skiba | Amy | $ 541.15 |
| 118 | Skladany | Jared | $ 309.50 |
| 119 | Smith | Kevin | $ 811.60 |
| 120 | Swarny | Linda | $ 1,397.96 |
| 121 | Tadusz | Sarah | $ 418.90 |
| 122 | Tierney | Kaelie M. | $ 25.00 |
| 123 | Tosland | Richard c. | $ 142.45 |
| 124 | Trusnik | Dawn | $ 1,127.19 |
| 125 | Turner | Bridgette | $ 1,073.76 |
| 126 | Underwood | Bianca | $ 279.98 |

**Cooper v. Winking Lizard**
**Settlement Agreement - Exhibit A**

|     | Last Name | First Name | Settlement Award |
|-----|-----------|------------|------------------|
| 127 | Urban | Gabrielle | $ 213.27 |
| 128 | Urban-Morris | Ericka | $ 422.63 |
| 129 | Valentine | Julie E. | $ 74.47 |
| 130 | Veith-Murillo | Lauren | $ 151.64 |
| 131 | Wade | Karyn | $ 122.05 |
| 132 | Weiner | Rachel | $ 935.97 |
| 133 | Wendell | Nicole | $ 299.14 |
| 134 | Whitcomb | Nancy | $ 25.00 |
| 135 | Wisniewski | Cortney | $ 143.81 |
| 136 | Woodworth | Christopher | $ 83.87 |
| 137 | Wortman | Kaitlyn | $ 421.41 |
| 138 | Wright | Carli | $ 25.00 |
| 139 | Yarnell | Austin | $ 25.00 |
| 140 | Zanella | Kenneth | $ 591.11 |